**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2938-WJM-BNB

CHARLES C. ADAMS JR.,

    Plaintiff,

v.

GRAND SLAM CLUB/OVIS, an Alabama corporation,
DENNIS CAMPBELL, and
THOMAS L. MIRANDA JR.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

    Plaintiff Charles C. Adams, Jr. ("Plaintiff") has brought this civil action alleging trademark infringement and related claims against Defendants Grand Slam Club/Ovis ("GSCO"), Dennis Campbell, and Thomas L. Miranda, Jr. (collectively "Defendants"). (ECF No. 8.) Before the Court is Defendants' Motion to Dismiss Under Rule 12(b)(6) and Rule 12(b)(2) ("Motion"). (ECF No. 14.) For the reasons set forth below, Defendants' Motion is granted.

**I. BACKGROUND**

    Plaintiff is a big game hunter, residing in Wyoming, who registered and began using the trademark "SUPER SLAM" in 1990 and 1991 in reference to the successful hunting of a certain number of North American big game species. (Am. Compl. (ECF No. 8) ¶¶ 16-17; ECF No. 22 Exs. 14, 15.) Defendant GSCO is a member-based non-profit organization whose activities include documenting and officially recognizing big

game hunting milestones, generally requiring a hunter's successful taking of a certain number of species. (Am. Compl. ¶ 8; ECF No. 16 at 1-2.) Defendant Campbell is the Executive Director of GSCO. (Am. Compl. ¶ 10; ECF No. 16 at 1.) Defendant Miranda is a big game hunter who has achieved a number of big game hunting milestones as certified by GSCO, and is co-owner and president of a corporation, Tom Miranda Outdoors, Inc., which manages his business transactions. (ECF No. 17 at 1-2.)

In 2009, GSCO began using the term "SUPER SLAM" on its website and other materials. (Am. Compl. ¶ 37.) In September 2009, Defendant Campbell wrote a letter to Plaintiff on GSCO letterhead regarding Plaintiff's trademark and GSCO's use of the term. (Am. Compl. ¶ 38; ECF No. 22 Ex. 1.) Shortly thereafter, GSCO released the first issue of a magazine entitled "SUPER SLAM OF NORTH AMERICAN BIG GAME." (Am. Compl. ¶ 40; ECF No. 22 Ex. 1.) Defendant Miranda, through Tom Miranda Outdoors, Inc., began contracting with GSCO in 2010 to promote big game hunting milestones, including "SUPER SLAM," via Internet, video and print media. (Am. Compl. ¶¶ 43-44; ECF No. 17 at 1-2.) In 2010 and 2011, GSCO registered trademarks for "SUPER SLAM" and "SUPER SLAM OF NORTH AMERICAN BIG GAME." (ECF No. 22 Ex. 13.)

Plaintiff filed a Complaint on November 8, 2012 (ECF No. 1), and an Amended Complaint on December 6, 2012. (Am. Compl.) Plaintiff brings claims for trademark infringement and related claims under the Lanham Act, 15 U.S.C. §§ 1051-1127, the Colorado Deceptive Trade Practices Act, Colo. Rev. Stat. §§ 6-1-105 *et seq.*, common law trademark rights, and invasion of privacy, alleging that Defendants infringed Plaintiff's trademark on the term "SUPER SLAM." (Am. Compl. pp. 2, 6-7.) Plaintiff

seeks damages, injunctive relief, the cancellation of GSCO's "SUPER SLAM" trademarks, and other relief. (*Id.* at 17-19.)

On February 28, 2013, Defendants filed the instant Motion. (ECF No. 14.) Plaintiff filed a Response to Defendants' Motion on February 28, 2013. (ECF No. 22.) Defendants filed their Reply on March 14, 2013. (ECF No. 24.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). When the district court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id.* (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)). A *prima facie* showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Court will accept the well-pled allegations (namely, the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether

Plaintiffs have made a *prima facie* showing that personal jurisdiction exists. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Any factual conflicts must be resolved in the plaintiff's favor. *Wentz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### B.     Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). The "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). This requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, [but also to] provide fair notice to defendants of the actual grounds of the claim against them." *Id.*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### III.  ANALYSIS

Defendants' Motion makes four arguments: (1) this Court lacks personal jurisdiction over Defendant Campbell; (2) this Court lacks personal jurisdiction over Defendant Miranda; (3) Plaintiff fails to state a claim against Defendant Miranda; and (4) Plaintiff fails to state a claim for counterfeiting.  (ECF No. 14.)  The Court will consider each argument below.

**A.  Personal Jurisdiction**

Defendants argue in their Motion that the Court lacks personal jurisdiction over Defendants Campbell and Miranda, and that all claims against those two Defendants should therefore be dismissed.  (ECF No. 14 at 9-10, 13-15.)

The Tenth Circuit has established a two-part test for personal jurisdiction: "First, we ask whether any applicable statute authorizes service of process on defendants. Second, we examine whether the exercise of statutory jurisdiction comports with constitutional due process demands."  *Dudnikov*, 415 F.3d at 1070.  "In a federal question case such as [a trademark infringement action], in which the federal statute at issue does not authorize nationwide service, personal jurisdiction is determined according to the law of the forum state."  *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A); *SCC Comm'cns Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002)).  In Colorado, the state's long arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124).  Thus, the Court

need only address the constitutional question of whether the exercise of personal jurisdiction comports with due process. *Dudnikov*, 514 F.3d at 1070 (noting that the inquiry into whether any statute authorizes service of process "effectively collapses into the second, constitutional, analysis" in Colorado).

To determine whether personal jurisdiction is proper under the Constitution, a court first looks to find minimum contacts with the forum state such that a defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The focus is on protecting a defendant's liberty interest in not being subject to "the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King*, 471 U.S. at 472 (quotations and citation omitted). "[T]he question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (internal quotation marks omitted). If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The standard of reasonableness is measured by whether an exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* at 320.

The minimum contacts analysis differs depending on whether it arises from general or specific jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. General jurisdiction "arises when a defendant maintains continuous and systematic contacts

with the forum state even when the cause of action has no relation to those contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In contrast, a court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). In a tort context like the trademark infringement alleged here, a defendant has "purposefully directed" his activities at Colorado or its residents when he has (1) taken intentional action, (2) that was "expressly aimed" at Colorado, (3) with the knowledge that "the brunt of th[e] injury" from the action would be felt in Colorado. *Dudnikov*, 514 F.3d at 1072 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)); *see also Impact Prods., Inc.*, 341 F. Supp. 2d at 1190.

Here, Plaintiffs' Amended Complaint alludes to both general and specific jurisdiction over all Defendants. (Am. Compl. ¶ 4.) However, in his Response to the instant Motion, Plaintiff argues only that the Court has specific jurisdiction over Defendants Campbell and Miranda, and abandons any argument for general jurisdiction. (ECF No. 22 at 11-17.) Accordingly, the Court will examine only whether Defendants Campbell and Miranda had sufficient minimum contacts with Colorado so as to invoke specific personal jurisdiction.

Plaintiff claims that he has made a *prima facie* showing of Campbell's minimum contacts with Colorado by way of Campbell's actions as the Executive Director of GSCO. (ECF No. 22 at 14.) Plaintiff alleges that Campbell was the "mastermind" behind GSCO's use of the "SUPER SLAM" trademark, and that his letter to Plaintiff

7

regarding the use of the "SUPER SLAM" mark revealed that Campbell was "a moving, active conscious force behind the infringement of Plaintiff's trademark." (Am. Compl. ¶ 38; ECF No. 22 at 14.) Because GSCO has numerous members in Colorado, distributes its "SUPER SLAM" magazine in Colorado, and the big game hunting population that is GSCO's target audience is "more centered in the West, including in Colorado," Plaintiff claims that Campbell has sufficient minimum contacts through his personal role in GSCO's infringing conduct to confer specific personal jurisdiction on this Court.[1]  (ECF No. 22 at 15.)

As for Miranda, Plaintiff alleges that minimum contacts are established by a showing that Miranda made a video recording of a hunt in Colorado and distributed that video nationwide, including in Colorado, as "part of his business promotion using the trademark SUPER SLAM." (Am. Compl. ¶¶ 13-14.) Plaintiff also alleges that Miranda is featured on both his own website and that of GSCO, using the "SUPER SLAM" mark "in a variety of ways" on the websites, which were accessible to Colorado residents. (*Id.* ¶¶ 43-44.)

Plaintiff has successfully alleged intentional acts by both Defendants Campbell and Miranda that would suffice to meet the first element of purposeful direction. *See Dudnikov*, 514 F.3d at 1071. However, nothing in the record suggests that either Campbell or Miranda "expressly aimed" any of their activities specifically at Colorado

---

[1] Defendants' Motion argues in response that both Defendants Campbell and Miranda are insulated from personal jurisdiction by their respective roles in corporate entities. (ECF No. 14 at 10, 13.) Because the Court finds that Plaintiff has failed to allege sufficient facts to confer personal jurisdiction regardless of these Defendants' status as corporate agents, the Court need not evaluate Defendants' arguments regarding corporate insulation.

such that the "brunt" of the injury would be felt here. Plaintiff has alleged two categories of injury resulting from the infringement of his trademark: (1) harm to Plaintiff himself, his reputation, and his trademark rights, and (2) harm to the public in the form of deception and consumer confusion. (Am. Compl. at ¶ 57.) Based upon the facts as Plaintiff has alleged them, any harm to Plaintiff was directed at him in his home district of Wyoming, and any harm to the public was directed nationwide, not at Colorado. Although Plaintiff has alleged that a significant portion of the public affected by Defendants' conduct is located in Colorado, permitting the inference that it was foreseeable that Colorado consumers would be affected by the alleged infringement, Plaintiff has failed to allege facts from which the Court could find that Campbell's and Miranda's activities were "expressly aimed" at Colorado (as opposed to, say, Wyoming), that Colorado was "the focal point" of the infringement and the resulting harm, or that Colorado residents have suffered the "brunt of the harm." *See Calder*, 465 U.S. at 789; *see also Burger King*, 471 U.S. at 474 (foreseeability of non-forum resident causing injury in forum state not sufficient for exercise of personal jurisdiction); *Impact Prods., Inc.*, 341 F. Supp. 2d at 1191 (plaintiff "must present 'something more' than the injuries it allegedly suffered as a result of [defendant]'s out-of-forum infringement in order to make a *prima facie* case that [defendant] expressly targeted it or Colorado through this conduct") (citation omitted).

Accordingly, the Court finds that Plaintiff has failed to make a *prima facie* showing that Defendants Campbell and Miranda had sufficient minimum contacts with Colorado to warrant specific jurisdiction. Because Plaintiff has failed to demonstrate

the requisite minimum contacts, the Court need not review the second prong of the personal jurisdiction analysis to determine if the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Defendants' Motion is granted insofar as it requests dismissal of Defendants Campbell and Miranda for lack of personal jurisdiction.

### B.     All Claims Against Defendant Miranda

Defendants seek to dismiss all of Plaintiff's claims against Defendant Miranda, arguing that Plaintiff has failed to plead any facts that would submit Defendant Miranda to liability. (ECF No. 14 at 11.) Because the Court lacks personal jurisdiction over Defendant Miranda, he was dismissed from this case in Part III.A., above. Accordingly, Defendants' Motion is denied as moot insofar as it seeks the dismissal of all claims against Defendant Miranda under Rule 12(b)(6).

### C.     Counterfeiting Claim

Defendants' Motion argues that Plaintiff's claim for counterfeiting, Count Nine of Plaintiff's Amended Complaint, should be dismissed under Rule 12(b)(6) because Plaintiff has failed to plead the elements of a counterfeiting claim. (ECF No. 14 at 5-9.)

"[C]ounterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (citing 4 McCarthy on Trademarks § 25:10). The Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The

Lanham Act prohibits the use of a counterfeit mark to sell, distribute, or advertise goods. *Id.* § 1116(d)(1)(A).

Here, Defendants argue that Plaintiff has failed to plead that Defendants' use of "SUPER SLAM" is identical to or indistinguishable from Plaintiff's, and that Defendants' mark is "spurious," and therefore fails to state a claim for counterfeiting. (ECF No. 14 at 5-9.) Defendants argue that Plaintiff has not alleged that Plaintiffs' mark is visually identical to their own uses of the mark, and also failed to attach visual images to permit the Court to compare the two marks to evaluate whether they are identical or substantially indistinguishable. (*Id.* at 5-8.)

The caselaw on what is required to plead identicality in a counterfeiting claim is understandably thin, as the majority of counterfeiting cases involve obviously identical marks. *See, e.g.*, *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (finding counterfeiting where defendant purchased bags bearing plaintiff's mark and used them to package its own potatoes after its license to use the mark had expired); *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 706 (9th Cir. 1999) (affirming a finding of counterfeiting where defendant reconditioned used Rolex watches with unauthorized or generic parts and sold them as genuine Rolex watches); *contra Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007) (finding no counterfeiting "[i]n selling 'Chewy Vuiton' dog toys, [because] Haute Diggity Dog is not selling knock-off LOUIS VUITTON handbags with a counterfeit LV mark, and no reasonable trier of fact could so conclude"). While the Court has found no support for Defendants' argument that Plaintiff's failure to provide evidence for visual comparison of the marks is an admission that they are not identical, and therefore not

counterfeit (ECF No. 14 at 8), the cases do demonstrate that "courts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand." *Gucci Am.*, 868 F. Supp. 2d at 242.

The element of identicality distinguishes a counterfeiting claim from other classes of trademark infringement. *See id.* However, even in the broader scope of infringement, "[t]he similarity between two marks is an important factor in trademark infringement analysis because one's adoption of a mark similar to a preexisting mark not only bears independently upon the likelihood of confusion, but also may support an inference that one intended to draw upon the reputation of the preexisting mark." *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 869 (10th Cir. 2008). While attaching visual images to a pleading may not be required, "[t]he degree of similarity between marks turns upon sight, sound, and meaning," and a claim that two marks are identical or substantially indistinguishable must be based upon allegations of plausible facts supporting such a conclusion.[2]  *See id.*

Thus, to plead a counterfeiting claim, Plaintiff must do more than make

---

[2] Defendants assert that to properly allege a counterfeiting claim, "the use of the same words as the registered mark is not sufficient. The alleged counterfeit mark must be presented in the same way as the registered mark." (ECF No. 14 at 5.) Although Defendants cite two cases in which courts found a lack of identicality because of differences in visual presentation, they have not cited, and the Court has not identified, any case explicitly supporting a requirement to demonstrate identical presentation at the pleading stage. (*See id.* at 6.) Here, Plaintiff's trademark registration includes no more detail regarding its visual presentation than "typeset word(s)/letter(s)/number(s)." (ECF No. 22 Ex. 10.) However, the Court notes that Plaintiff's mark was *not* a registered "standard character" mark, which "registrations make no claim to any particular font style, color, or size of display and, thus, are not limited to any particular presentation." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 970 (10th Cir. 2002). Thus, without deciding on Defendants' argument as a general matter, because Plaintiff's registration *does* have a claim to a "particular presentation," that presentation must be a component of pleading identicality or indistinguishability between the two marks in the instant case.

conclusory allegations that "Defendants' use of the SUPER SLAM mark is identical," and that Defendants' use "was and is a counterfeit mark because it is a counterfeit of a mark that is registered" for the same goods. (Am. Compl. ¶¶ 45, 118.) The only comparison between the marks in Plaintiff's Amended Complaint is an allegation that Defendants used "certain design imagery which is nearly identical and confusingly similar to that used by Plaintiff." (Am. Compl. ¶ 51.) However, if alleging that an infringing mark is "nearly identical" and "confusingly similar" suffices to state a claim for counterfeiting, virtually all trademark infringement claims would also be counterfeiting claims. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (liability for trademark infringement requires proof of "likelihood of confusion"). Plaintiff's allegations do not support a plausible finding that the two marks in this case were "stitch-for-stitch copies." *Gucci Am.*, 868 F. Supp. 2d at 242. Accordingly, the Court finds that Plaintiff has failed to plead a plausible claim for counterfeiting.[3]

Therefore, the Court grants Defendant's Motion to the extent that it seeks the dismissal of Plaintiff's Counterfeiting Claim for failure to state a claim upon which relief can be granted.

---

[3] The Court notes Plaintiff's request in the conclusion of his Response, in which he states that, in the event this Court grants Defendants' Motion, "Adams will want to replead the claim for relief, especially the counterfeit claim." (ECF No. 22 at 17.) If Plaintiff seeks leave to amend his pleadings, he must do so by filing a motion requesting such leave, in accordance with this Court's Revised Practice Standard III.B., requiring that "[a]ll requests for the Court to take any action . . . must be contained in a separate, written motion," as well as with D.C.COLO.LCivR. 7.1(c), which states that "[a] motion shall not be included in a response or reply . . . [and] shall be made in a separate paper."

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 1I ) is GRANTED in part and DENIED AS MOOT in part;

2. Defendants' Motion to Dismiss All Claims Against Defendants Dennis Campbell and Thomas L. Miranda, Jr., for lack of personal jurisdiction pursuant to Rule 12(b)(2) is GRANTED, Plaintiff's claims against Defendants Campbell and Miranda are DISMISSED WITHOUT PREJUDICE, and the Clerk and parties shall update the case caption in accordance with this Order;

3. Defendants' Motion to Dismiss Plaintiff's Counterfeiting Claim (Count Nine) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is GRANTED, and Plaintiff's Counterfeiting claim is DISMISSED WITHOUT PREJUDICE;

4. Defendant's Motion to Dismiss All Claims against Defendant Miranda pursuant to Rule 12(b)(6) is DENIED AS MOOT; and

5. Plaintiff is DIRECTED to file a Stipulation of Dismissal of the Constructive Trust Claim (Count Seven) no later than April 19, 2013, in accordance with the parties' representations of a stipulation to do so. This action remains pending as to the remainder of Plaintiff's claims against Defendant GSCO.

Dated this 9th day of April, 2013.

BY THE COURT:

William J. Martínez
United States District Judge