IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 12-cv-2938-WJM-BNB

CHARLES C. ADAMS JR.,

     Plaintiff,

v.

GRAND SLAM CLUB/OVIS, an Alabama corporation,

     Defendant.

---

## ORDER DENYING PLAINTIFF'S MOTION TO DISMISS

---

Plaintiff Charles C. Adams, Jr. ("Plaintiff") has brought this civil action alleging trademark infringement and related claims against Defendant Grand Slam Club/Ovis ("GSCO" or "Defendant").  (ECF No. 8.)  Before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaims 1, 2, and 6 for Failure to State Claims or for More Definite Statement ("Motion").  (ECF No. 30.)  For the reasons set forth below, Plaintiff's Motion is denied.

## I.  BACKGROUND

Plaintiff is a big game hunter who registered and began using the trademark "SUPER SLAM" in 1990 and 1991 in connection with goods and services related to archery.  (Counterclaims (ECF No. 29) ¶¶ 36-37; Am. Compl. (ECF No. 8) ¶¶ 16-17.)

Defendant GSCO is a member-based non-profit organization whose activities include documenting and officially recognizing big game hunting milestones, generally requiring a hunter's successful taking of a certain number of species.  (Am. Compl. ¶ 8;

Counterclaims ¶ 6.)  In 1967, the predecessor of GSCO, The Grand Slam Club, registered and began using the trademarks "GRAND SLAM" and "GRAND SLAM OF NORTH AMERICA WILD SHEEP" (the "GRAND SLAM Marks") for "providing recognition and incentives by the way of awards to demonstrate excellence in the field of wild sheep hunting[,]" among other uses.  (*Id.* ¶¶ 6, 17, 18; ECF No. 29 Exs. D, E.) GSCO later registered the trademark "GRAND SLAM" for publications.  (*Id.* ¶ 14; ECF No. 29 Ex. A.)

In 2009, GSCO registered and began using the trademarks "SUPER SLAM" and "SUPER SLAM OF NORTH AMERICAN BIG GAME" for publications and awards in the field of big game hunting.  (*Id.* ¶¶ 11, 20, 21; ECF No. 29 Exs. G, H.)  GSCO also owns the following trademarks in connection with big game hunting awards, among other things: "OVIS WORLD SLAM," "CAPRA WORLD SLAM," and "3/4 SLAM" (collectively, with "GRAND SLAM," "GRAND SLAM OF NORTH AMERICA WILD SHEEP,"  "SUPER SLAM," and "SUPER SLAM OF NORTH AMERICAN BIG GAME," the "GSCO SLAM Marks").  (*Id.* ¶¶ 15, 16, 19; ECF No. 29 Exs. B, C, F.)

Plaintiff filed a Complaint on November 8, 2012 (ECF No. 1), and an Amended Complaint on December 6, 2012 against GSCO, Dennis Campbell and Thomas L. Miranda, Jr. (the "Original Defendants").  (Am. Compl. (ECF No. 8.))  Plaintiff brings claims for trademark infringement and related claims under the Lanham Act, 15 U.S.C. §§ 1051-1127, the Colorado Deceptive Trade Practices Act, Colo. Rev. Stat. §§ 6-1-105 *et seq.*, common law trademark rights, and invasion of privacy, alleging that Defendants infringed Plaintiff's trademark on the term "SUPER SLAM."  (Am. Compl. pp. 2, 6-7.)

On February 8, 2013, the Original Defendants moved to dismiss the claims

against defendants Dennis Campbell and Thomas L. Miranda for lack of personal jurisdiction, among other things.  On April 9, 2013, the Court granted in part the Original Defendants' motion to dismiss, and dismissed Plaintiff's claims against Dennis Campbell and Thomas L. Miranda, Jr.  (ECF No. 27.)

On April 23, 2013, Defendant GSCO filed an Answer and Counterclaims to the First Amended Complaint.  (ECF No. 29.)  GSCO's Counterclaims assert the following claims for relief: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a); (2) false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement; (4) common law unfair competition; (5) declaratory relief; and (6) cancellation of Plaintiff's "SUPER SLAM" trademark pursuant to 15 U.S.C. § 1115(b).  (*Id.*)

On May 14, 2013, Plaintiff moved to dismiss counterclaims 1, 2 and 6.  (ECF No. 30.)  GSCO filed a Response to Plaintiff's Motion on June 4, 2013 (the "Response").  (ECF No. 33.)  Plaintiff filed his Reply on June 15, 2013.  (ECF No. 41.)

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is

3

a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In considering a Rule 12(b)(6) motion, the Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits[.]" *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1066-67 (D. Colo. 2009) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

## III.  ANALYSIS

Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss GSCO's counterclaims for trademark infringement, unfair competition, and cancellation of Plaintiff's "SUPER SLAM" trademark for failure to state a claim, and moves in the alternative for a more definite statement under Federal Rules of Civil Procedure 12(e). The Court will consider each counterclaim below.

### A.    Trademark Infringement Under The Lanham Act

"[I]n order to establish trademark infringement, a plaintiff must prove the validity of the mark it seeks to protect and must also prove that the use of a similar mark by defendant is 'likely to cause confusion in the market place concerning the source of the different products.'" *USA Network v. Gannett Co.*, 584 F. Supp. 195, 198 (D. Colo. 1984) (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983)).  "'Confusion occurs when consumers make an incorrect mental association

4

between the involved commercial products or their producers' or 'when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product.'" *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009) (quoting *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir. 2008)).

      1.    Validity of the GSCO SLAM Marks

      With respect to the validity of its marks, GSCO's certificates of registration for its GSCO SLAM Marks are *prima facie* evidence of the validity of the marks and of GSCO's exclusive right to use them in connection with services stated in the registrations. *See USA Network*, 584 F. Supp. at 198 (citing 15 U.S.C. §§ 1057(b) and 1115(a)); *RE/MAX Int'l v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698 (S.D. Tex. 2009) ("Under the Lanham Act, RE/MAX's certificate of registration for each of its federal trademarks is prima facie evidence of the validity of the mark and of RE/MAX's exclusive right to use it in connection with real estate brokerage and insurance brokerage services."). Accordingly, GSCO has sufficiently alleged the first element of its trademark infringement counterclaim. (*See* Counterclaims ¶¶ 6, 17, 18; ECF No. 29 Exs. A-H.)

      2.    Likelihood of Confusion

      To determine whether a likelihood of confusion exists, courts examine six non-exhaustive factors:

> (1) [T]he degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

5

*John Allan Co. v. Craig Allen Co. LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008).  The

burden is on GSCO to adequately plead facts showing a likelihood of confusion.  *See id.*

        Under established Tenth Circuit law, whether Plaintiff's "SUPER SLAM" mark is

likely to confuse the public in terms of it being associated with GSCO is a question of

fact and should not be determined conclusively on a motion to dismiss.  *See Health*

*Grades*, 634 F. Supp. 2d at 1242 ("Most courts hold that this fact-intensive question,

however analyzed, is not appropriate for determination on a motion to dismiss, but

should be determined on summary judgment or at trial.").  Thus, the Court need only

decide whether GSCO has pled sufficient facts to make a likelihood of confusion

plausible.

        GSCO alleges that its GSCO SLAM Marks are superior to Plaintiff's "SUPER

SLAM" mark, and that Plaintiff's use of "SUPER SLAM" is likely to cause confusion with

the GSCO SLAM Marks.  (ECF No. 33 p. 7.)  GSCO's claim appears to be based on the

"family of marks" theory in trademark law.  "A family of marks exists when one common

family characteristic appears as part of all the marks used, and the owner has

sufficiently advertised or promoted the marks to establish, in the minds of the public or

the trade, a recognition that he possesses a 'family of marks' identified by the common

characteristic."  *Scott v. Mego Int'l, Inc.*, 519 F. Supp. 1118, 1128 n.6 (D. Minn. 1981).

"[T]he issue of the existence of the family of marks should be judged at the time that the

junior user entered the marketplace."  *Pfizer Inc. v. Astra Pharm. Prods., Inc.*, 858 F.

Supp. 1305, 1329 (S.D.N.Y. 1994).

        In 1990, when Plaintiff first registered the "SUPER SLAM" mark, GSCO owned

only the two GRAND SLAM Marks.  (Counterclaim ¶ 36;  ECF No. 29 Exs. D, E.)

GSCO did not begin registering the remaining GSCO SLAM Marks until 1992.  (ECF

No. 22 Ex. A-C, F-H.)  Therefore, although GSCO may have had a "GRAND SLAM"

family characteristic with its two GRAND SLAM Marks, GSCO did not have a family of

marks with the more general "SLAM" family characteristic at the time Plaintiff entered

the marketplace.  *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 819 (7th

Cir. 2002) ("[T]he proponent of a family of marks must prove that, prior to the junior

user's entry, all or many of the marks in the alleged family were used and promoted in

such a way as to create public perception of the family mark as an indicator of source.").

Accordingly, in the absence of support for GSCO's "family of marks" theory, the Court

must determine whether GSCO has alleged facts sufficient to support its claim that

Plaintiff's "SUPER SLAM" mark is likely to cause confusion with GSCO's GRAND SLAM

Marks.

The GRAND SLAM Marks were established in the field of hunting in 1967.

(Counterclaims ¶ 6.)  Over twenty years later, Plaintiff established "SUPER SLAM" in

the related hunting market.  (*Id.* ¶ 36.)  GSCO claims that Plaintiff had knowledge of the

GRAND SLAM Marks, and began using "SUPER SLAM" to create a false association in

consumers' minds between Plaintiff and GSCO's marks and services.  (*Id.* ¶ 25.)

GSCO utilizes its GRAND SLAM Mark for publications, educational services, providing

recognition and incentives by way of awards, and in connection with conventions,

conferences, seminars, and workshops.  (Counterclaims ¶¶ 17-18.)  GSCO claims that

although Plaintiff registered "SUPER SLAM" in connection with goods and services

related to archery, Plaintiff also uses the "SUPER SLAM" mark for publications,

educational services, providing recognition and incentives by way of awards, and in connection with conventions, conferences, seminars, and workshops.  (Counterclaims ¶¶ 25-29, 31, 33, 37, 39.)

These facts, as GSCO has alleged them, establish a plausible likelihood that a hunting consumer would presume that Plaintiff's "SUPER SLAM" mark is associated with or sponsored by GSCO.  As such, the Court finds that GSCO's allegations, for purposes of the Motion to Dismiss, sufficiently state that Plaintiff's "SUPER SLAM" mark is likely to cause confusion in the marketplace.  Accordingly, Plaintiff's Motion is denied with respect to Defendant's first counterclaim.

**B.      False Designation of Origin and Unfair Competition Under the Lanham Act**

GSCO's second counterclaim alleges that Plaintiff is engaged in unfair competition in violation of 15 U.S.C. § 1125(a).  "An unfair competition claim requires a plaintiff to establish that (1) the mark/name is protectable, and (2) that defendants' use of an identical or similar mark will likely cause confusion among consumers."  *Greenway Univ., Inc. v. Greenway of Arizona, LLC*, 2012 WL 1801948, at *7 (D. Colo. May 17, 2012) (citing *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004)). "Courts addressing claims of both trademark infringement and unfair competition, address the claims together because they have virtually identical elements . . . ."  *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir.2008) ("Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under ... section 43 of the Lanham Act.").

8

For the reasons already explained, the Court finds that GSCO's allegations are sufficient to allege that Plaintiff's "SUPER SLAM" mark is likely to cause confusion in the marketplace.  Accordingly, Plaintiff's Motion is denied as to Defendant's second counterclaim.

## C.     Cancellation of Plaintiff's Trademark Registration

GSCO's sixth counterclaim seeks to cancel Plaintiff's "SUPER SLAM" mark on the grounds that Plaintiff obtained the mark based on fraudulent misrepresentations to the United States Patent and Trademark Office ("PTO").  (ECF No. 33 pp. 13-14 (quoting 15 U.S.C. § 1064(3) ("A petition to cancel a registration of a mark . . . may . . . be filed. . . [a]t any time if . . . its registration was obtained fraudulently . . . .").)  Plaintiff argues that GSCO's sixth counterclaim should be dismissed because the claims alleging fraud were not pled with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.[1]  (ECF No. 30 ¶¶ 1-12.)

"[A] party seeking cancellation of an incontestable registered trademark on grounds of fraud must show a false representation of a material fact made with a deliberate attempt to mislead the Trademark Office."  *Prince Lionheart, Inc v. Halo Innovations, Inc.*, 2007 WL 1346578, at *3 (D. Colo. May 7, 2007).  To satisfy the particularity requirement, GSCO must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the

---

[1]  Plaintiff also moves under Federal Rule of Civil Procedure 12(e) for a more definite statement with respect to GSCO's sixth.  (ECF No. 30 p. 1.)  While the Court notes that GSCO did not assert this counterclaim under the appropriate statute (*see* Counterclaims ¶ 75), the Court finds that the counterclaim has been asserted with sufficient specificity, such that Plaintiff has adequate notice of the counterclaim against him.  (*See* ECF No. 30 ¶ 3.)  Accordingly, Plaintiff's motion for a more definite statement is denied.

consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902 (10th Cir. 2000).

GSCO alleges fraud based upon Plaintiff's declaration that he was using the "SUPER SLAM" mark in commerce or in connection with "[a]rchery bows, archery arrows and archery accessories; namely, bowsights, arrowheads, bowstring peeps, stabilizers (for bows), arrow rests, string silencers, arrow quivers, targets, target butts, wrist slings spare arms, arm guards, tabs, shooting gloves and chest protectors." (Counterclaims ¶¶ 31, 33, 37, 39.)  GSCO alleges that "*[u]pon information and belief*, [Plaintiff] knew at the time that neither he nor his licensees were using the SUPER SLAM mark in connection with *all of the goods* identified in the [trademark applications] . . . ." (*Id.* ¶¶ 32, 35, 38, 41, 43 (emphasis added).)

Courts have found that, for the purposes of Rule 9(b), it is adequate to allege that a trademark applicant made various false representations in its statement of use, and that contrary to the applicant's representations, the mark was not being used in conjunction with all of the goods and services when the statement of use was filed. *See Bauer Bros. LLC v. Nike, Inc.*, 2011 WL 843971, at *6 (S.D. Cal. Mar. 8, 2011) ("Bauer's statement that it was using the mark . . .  in connection with all of the 115 items identified in its . . . Application," including "ski bibs" and "galoshes[," was] adequately alleged with the particularity required by the applicable pleading standards."); *CTF Dev., Inc. v. Penta Hospitality, LLC*, 2009 WL 3517617, at *2-3 (N.D. Cal. Oct. 26, 2009) (holding that a counterclaim adequately alleged fraud when it alleged that the applicant

10

"made various false representations in its statement of use," and "that, contrary to [the applicant]'s representations, at the time that [the applicant] filed its statement of use the mark was not being used in conjunction with 'all of [the applicant]'s Services,'" including specific examples).

Plaintiff argues, however, that GSCO allegations fail to meet the Rule 9(b) pleading standard because GSCO pled "upon information and belief" that Plaintiff had not used his trademark in connection with all of the items listened in his trademark registrations.  (ECF No. 33 pp. 12-13.)  "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992) (citation omitted).  Here, GSCO has not pled a factual basis for its assertion that Plaintiff had not used the "SUPER SLAM" mark in connection with all of the goods identified in the trademark registrations, nor included such a factual basis in its Response.  (*See* Counterclaims; ECF No. 33 pp. 11-13.)

Had GSCO not pled upon information and belief, the allegations in Defendant's sixth counterclaim would have been sufficiently pled.  *See Scorpiniti v. Fox Television Studios, Inc.*, 2012 WL 5905062, at *5 (N.D. Iowa Nov. 26, 2012) (finding allegations were "sufficiently particular to satisfy the Rule 9(b) pleading requirements" before determining whether movant adequately pled upon information and belief).

Additionally, the Court notes that GSCO has submitted documents with its Motion for Partial Summary Judgment that provide the factual basis for GSCO's claims that Plaintiff was not using "SUPER SLAM" in connection with all of the goods identified in

the applications.  (*See* ECF No. 57 Attchs. 3-8.)  Plaintiff, therefore, has sufficient notice of the claims against him and the sufficient facts for those claims.  *See Scorpiniti*, at *6. It would be an exultation of form over substance to dismiss this counterclaim and require GSCO to replead it without the phrase "information and belief," thus mooting GSCO's Motion for Partial Summary Judgment and requiring GSCO to re-file it in identical form.

The Court finds that GSCO has alleged sufficient facts in support of its fraud counterclaim to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Accordingly, Plaintiff's Motion is denied with respect to Defendant's sixth counterclaim.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss (ECF No. 30) is DENIED in its entirety.

Dated this 10th day of January, 2014.

BY THE COURT:

_____

William J. Martínez
United States District Judge